**Roberta TEHAN, D.M.D., Plaintiff,**

v.

**DISABILITY MANAGEMENT SERVICES, INC., Reassure America Life Insurance Company, and Cybertek Corporation, Defendants.**

**Civil Action No. 00–2311 (MLC).**

United States District Court,
D. New Jersey.

Sept. 7, 2000.

David Lustbader, Livingston, NJ, for Plaintiff.

Mark E. Duckstein, Sills, Cummis, Zuckerman, Radin Tishman, Epstein & Gross, Newark, NJ, for Defendants Disability Management Services, Inc. and Reassure America Life Ins. Co.

Mark M. Tallmadge, Bressler, Amery & Ross, Morristown, NJ, for Defendant Cybertek Corp.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the application of defendants Disability Management Services, Inc. ("DMS") and Reassure America Life Insurance Company ("Reassure," collectively the "Reassure Defendants") for an order to show cause with temporary restraints seeking to stay certain injunctive relief provided to plaintiff Roberta Tehan ("Tehan") in an Order Entering Preliminary Injunctive Relief dated May 2, 2000 (the "Order"), which was entered by the Superior Court of New Jersey (the "State Court") prior to removal of this case to the United States District Court for the District of New Jersey. Among other things, the Order preliminarily enjoined DMS, Reassure, and Cybertek Corp. ("Cybertek") from: (1) canceling disability insurance policy number H 402012 (the "Policy") issued by Mutual Benefit Life Insurance Company ("MBL") to Tehan, (2) collecting premiums on the Policy, and (3) discontinuing payment of disability payments due Tehan under the Policy retroactive to January 2000 (collectively the "Restraints"). The Court denied the Reassure Defendants' request for temporary restraints and set a date for a preliminary hearing on the Reassure Defendants' request to dissolve or modify the Restraints. For the reasons expressed, the Reassure Defendants' application to dissolve or modify the Order will be denied except that Tehan will be required to provide the Reassure Defendants with security for the payment of such costs and damages as may be incurred or suffered by them should the Court ultimately find that the Reassure Defendants were wrongfully restrained.

The Court will issue an Order to Show Cause directing the parties to address the amount and form of security required by Federal Rule of Civil Procedure 65(c). In addition, the Court will continue the Restraints on a temporary basis pending resolution of the Order to Show Cause.

## BACKGROUND

On July 1, 1987, MBL issued the Policy to Tehan, who was practicing as a dentist at the time. (Certif. of Mark E. Duckstein, Esq. filed 5–12–00 ("Duckstein Certif.") Ex. 5: Certif. of Robert F. Mills ("Mills Certif.") ¶ 4 and Ex. A: the Policy.) The Policy was later assigned to MBL Life Assurance Corp. ("MBL Life") and again to defendant Reassure, which now holds the Policy. (Mills Certif. ¶ 4.)

The Policy provides a total disability benefit if the insured suffers a "total disability" as defined under the Policy. (Policy § 1.3.) The Policy states that the insured suffers a "total disability" when, due to sickness or injury, either:

(a) the insured is not able to engage in his or her former occupation; or

(b) the insured's monthly income is reduced to one-fourth or less of his or her indexed prior monthly earned income.

The insured is not totally disabled unless he or she is under the care of a licensed physician other than the insured.

(Policy § 1.3.)

Tehan began receiving benefits under the Policy between April 1, 1989 and March 1, 1990, during which time she was undergoing treatment for leukemia (the "First Claim"). (Mills Certif. ¶ 6.) Tehan's disability benefits were discontinued in March 1990 because Tehan's leukemia went into remission and Tehan returned to her dental practice part-time; thus, she was no longer "totally disabled" under the Policy. (*Id.* ¶ 7.)

On December 3, 1993, Tehan made a second claim for benefits based upon her leukemia and a "resulting psychiatric disorder" (the "Second Claim"). (*Id.* Ex. B: Disability Claim dated 12–3–93.) Tehan indicated on her claim form that her condi-

tion eventually got worse and, thus, she stopped practicing dentistry on June 13, 1993, when she sold her practice. (*Id.*) Following a review of the Second Claim, MBL began paying disability benefits effective March 1, 1993. (*Id.* ¶ 9.)

In or about April 1999, DMS, the servicing agent for Reassure, began conducting a review of Tehan's Second Claim. (*Id.* ¶ 10 and Ex C: Letter from Joy DeSanctis to Robert Mills of 5/20/99.) Pursuant to section 5.3 of the Policy, which provides that the insurer may "at any reasonable time or times, have the insured examined at our expense by physicians of our choice," DMS had Tehan examined by David J. Gallina, M.D., P.A. (*Id.* ¶ 16 & Ex. D: Letter of David J. Gallina, M.D. to Robert Mills of 7/20/99, at 14.) In Dr. Gallina's July 15, 1999 report, Dr. Gallina concluded, "I cannot comment on the physical difficulties that she claims to experience in the practice of dentistry, but emotionally, she demonstrates no neuropsychiatric illness that would prevent her from adequately functioning in virtually any job capacity, including that of a dentist." (*Id.* Ex. D at 14.)

In a letter dated December 14, 1999 (the "Termination Letter") to David Lustbader, Esq., Tehan's attorney, Robert F. Mills, a claims consultant with DSM, indicated that a copy of Dr. Gallina's July 15, 1999 report was provided to Mr. Lustbader on August 23, 1999 and that Tehan was given an opportunity to provide medical evidence to show that Tehan continues to be "totally disabled." (*Id.* Ex. E: Letter from Robert F. Mills to David Lustbader, Esq. of 12/14/99.) The Termination Letter indicates that Tehan does not qualify for additional benefits under the Policy and, thus, her claim will be closed and the Policy will be returned to a premium-paying status. (*Id.* Ex. E at 3.) Accordingly, DSM stopped paying benefits to Tehan effective December 14, 1999.

In March 2000, Tehan initiated this action in the State Court by way of an Order to Show Cause seeking the reinstitution of benefits under the Policy retroactive to the date of termination, the continued waiver of premiums under the policy, and various damages, including punitive damages, related to the way the claim for coverage was handled. (Verified Petition dated 2/23/00.) On March 16, 2000, the State Court entered an Order to Show Cause with temporary restraints. (Order to Show Cause filed 3/17/00.) The Order to Show Cause temporarily restrained MBL, MBL Life, and DMS from attempting to collect premiums from Tehan for the Policy retroactive to the date of termination and from canceling the Policy for failure to pay premiums. (*Id.*) In addition, the Order to Show Cause ordered MBL, MBL Life, and DMS to show cause on April 6, 2000, why they should not be required to reinstitute disability benefits under the terms of the Policy retroactive to the date of termination. (*Id.*)

On April 6, 2000, Tehan filed an Amended Verified Petition adding Reassure and Cybertek Corporation ("Cybertek") as defendants. (Amended Verified Petition filed 4–6–00.) On the same date, which was the return date of the Order to Show Cause, the State Court entered an Amended Order to Show Cause, which continued the temporary restraints and ordered MBL, MBL Life, DMS, Reassure, and Cybertek to show cause on April 14, 2000 why they should not be required to reinstitute disability benefits under the terms of the Policy retroactive to the date of termination. (Amended Order to Show Cause filed 4–6–00.)

The State Court heard oral argument on Tehan's application on April 20, 2000. (Order Entering Preliminary Injunctive Relief filed May 2, 2000 ("Order"); Duckstein Certif. Ex. 14: Tr. of 4/20/00 Order to Show Cause Hr'g ("OSC Hr'g").) After hearing oral argument, the State Court rendered an oral decision. (OSC Hr'g at 25.) The decision included a finding that Tehan needs the disability insurance benefits of approximately $3,810 per month, which supplements her Social Security dis-

ability benefits of approximately $1,159 per month, for her day-to-day survival and would be irreparably injured without them. (*Id.;* Duckstein Certif. Ex. 9: Tehan's Letter Brief dated 4–12–00 at 8.) In making this finding, the State Court found that Tehan should not be required to cut back further on expenses of approximately $3,481 per month (such as car and cable t.v. expenses) or refinance her house to demonstrate irreparable injury. (OSC Hr'g at 16, 23, 25; Duckstein Certif. Ex. 9: List of Roberta Tehan's Expenses.) In addition, the State Court found that the weight and quality of the evidence of Tehan's three treating physicians, Dr. Lee, Dr. Barth, and Dr. Kaufman, establish that Tehan is "totally disabled" as a result of her leukemia. (*Id.* at 25.) The State Court entered an Order memorializing its oral decision on May 2, 2000, which among other things entered the Restraints. (Order.)

On May 11, 2000, the Reassure Defendants removed the matter to the United States District Court for the District of New Jersey on the basis of diversity jurisdiction, which arose when former non-diverse defendants were dismissed from the case. (Notice of Removal filed 5–11–00.) On May 12, 2000, the Reassure Defendants applied for an Order to Show Cause with temporary restraints seeking a stay and dissolution of the Restraints to the extent they required retroactive and continuing payment by Reassure to Tehan of disability benefits under the Policy. (Duckstein Certif. ¶ 1.) On May 12, 2000, this Court denied the Reassure Defendants' request for temporary restraints and scheduled oral argument on their application to modify the Order, which was heard on August 10, 2000.

### DISCUSSION

■ After the removal of an action from state court, the federal court acquires full and exclusive subject matter jurisdiction over the litigation. *See, e.g., Ward v. RTC,* 972 F.2d 196, 198 (8th Cir.1992). The case will then proceed as if it had been brought in the federal court originally. *Nissho–Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1303 (5th Cir.1988); Wright & Miller, 14C Fed. Prac. & Proc. Juris.3d § 3738.

■ Pursuant to 28 U.S.C. § 1450, "[a]ll injunctions, orders, and other proceedings had in such action prior to removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450; *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 437, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). This provision is designed to promote judicial economy by making it unnecessary in many cases to duplicate in federal court pleadings previously filed in state court, and to ensure that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal. *Granny Goose Foods,* 415 U.S. at 435–36, 94 S.Ct. 1113.

■ Once a case has been removed to federal court, federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. *Granny Goose Foods,* 415 U.S. at 437, 94 S.Ct. 1113. Section 1450 does not set forth the standard for dissolving or modifying such orders or judgments. Instead, the orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the district court. *Colonial Bank & Trust Co. v. Cahill,* 424 F.Supp. 1200, 1203 (N.D.Ill.1976); 32A Am.Jur. Fed. Cts. § 1701; *see also* Fed. R.Civ.P. 81(c) (stating that the federal rules "apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal"). Thus, a district court has the power to enforce or continue orders or judgments entered by the state court as it would any such order or judgment it might itself have entered. 32A Am.Jur. Fed. Cts. § 1701; *Nissho–Iwai,* 845 F.2d at 1304; *Colonial Bank,* 424 F.Supp. at 1203.

Prior to removal, the Order was an interlocutory order, which could be appealed only by obtaining leave from the Appellate Division of the Superior Court of New Jersey. *See* N.J. Ct. R. 2:2–4, 2:5–6. In addition, the Order was subject to reconsideration at any time prior to entry of final judgment in the sound discretion of the State Court in the interest of justice. *See* N.J. Ct. R. 4:42–2. Upon removal, the Order became "federalized," i.e., the Order became transformed by operation of 28 U.S.C. § 1450 into an order of the district court. *Nissho–Iwai,* 845 F.2d at 1304. Therefore, federal procedure, rather than state procedure, governs the manner in which the Order is to be enforced and supplies the policy justifications supporting its continuance. *Id.* at 1303. To the extent the state court order requires the parties to act or refrain from acting in a manner inconsistent with federal procedural requirements, the district court must accommodate the order to federal law.[1] *Id.* (citing *Granny Goose Foods,* 415 U.S. at 439–41 & n. 15, 94 S.Ct. 1113).

In sum, whenever a case is removed, interlocutory state court orders are transformed by operation of 28 U.S.C. § 1450 into orders of the federal district court to which the action is removed. *Id.* at 1304. The district court is thereupon free to treat the order as it would any such interlocutory order it might itself have entered. *Id.* Thus, following removal, the Order became appealable as of right pursuant to 28 U.S.C. § 1292(a)(1)[2] and subject to the 10 day period for filing motions for reconsideration pursuant to Federal Rule of Civil Procedure 59(e)[3] and/or New Jersey Local Civil Rule 7.1(g).[4]

1. The standard for granting a preliminary injunction in a federal court in this circuit is substantially similar to the standard for granting a preliminary injunction in a New Jersey state court. *Compare ACLU v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc) (applying federal standard) *with Crowe v. DeGioia,* 90 N.J. 126, 447 A.2d 173 (1982) (applying New Jersey standard). Unlike a New Jersey state court, however, a federal court is required to condition the granting of such relief "upon the giving of security by the applicant." *Compare* N.J. Court R. 4:52–3 ("The court, on granting a temporary restraining order or interlocutory injunction or at any time thereafter, may require security or impose such other equitable terms as it deems appropriate.") *with* Fed. R.Civ.P. 65(c) ("No restraining order or preliminary injunction shall issue except upon giving of security by the applicant, in such sum as the court deems proper, for the payment of costs and damages as may be incurred by any party who is found to have been wrongfully enjoined or restrained."). The State Court did not condition the granting of the Restraints upon the giving of security. (Order.) In fact, the State Court never considered whether to impose such a requirement during the hearing. (Tr. of Hr'g.) Therefore, if we decide to continue the Restraints, we will condition such continuance upon the giving of adequate security by Tehan.

2. 28 U.S.C. § 1292(a)(1) provides that the "courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court".

3. Federal Rule of Civil Procedure 59(e) is entitled "Motions to Alter or Amend Judgment." The rule states as follows:

Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

It is well established that an order of the district court granting an injunction is a "judgment" for purposes of Rule 59(e). *See* Fed.R.Civ.P. 54(a) (" 'Judgment' as used in these rules includes a decree and any order from which an appeal lies"); *Square D Co. v. Fastrak Softworks, Inc.,* 107 F.3d 448, 450 n. 1 (7th Cir.1997).

4. Local Civil Rule 7.1(g) is entitled "Motions for Reargument." Because New Jersey district courts have used the terms "reargument" and "reconsideration" interchangeably, Local Civil Rule 7.1(g) has been found to govern both motions for reargument and motions for reconsideration. *See, e.g., In re Consolidated Parlodel Litig.,* 22 F.Supp.2d 320, 329 (D.N.J.1998). This rule states as follows:

A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge.

■ Under the federal practice, there are three ways to challenge the Order: (1) by filing a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and/or New Jersey Local Civil Rule 7.1(g),[5] (2) by filing a motion for reconsideration based on changed circumstances, and (3) by filing an appeal pursuant to 28 U.S.C. § 1292(a)(1).[6] We will discuss the Reassure Defendants' application as it relates to each of these methods.[7]

I. *Motion for Reconsideration Pursuant to Rule 59(e) and/or Local Civil Rule 7.1(g)*

■ It is well settled that a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and/or Local Civil Rule 7.1(g) is "an extremely limited procedural vehicle." *Resorts Int'l, Inc. v.*

There shall be served with the notice a brief setting forth concisely the matters or controlling decisions which counsel believes the Judge or Magistrate Judge has overlooked. No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be reargued orally.

5. A successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor because otherwise the right to move for reconsideration would be effectively denied. *See, e.g., Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 169 (3d Cir.1982).

6. The Reassure Defendants argue that we should consider *de novo* whether the Restraints should have been issued. (Br. in Supp. of Order to Show Cause dated 5–12–00 at 10) (citing *Galper v. U.S. Shoe Corp.,* 815 F.Supp. 1037, 1043 (E.D.Mich.1993)). The Reassure Defendants cite no authority in this circuit supporting a *de novo* review of the State Court's decision. In fact, the law in this circuit appears to support a contrary conclusion. *See* note 8, *infra.*

7. Any post-judgment substantive motion that is made within ten days of the judgment is deemed a Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) in order to diminish disputes over the appealability of orders where the motion was not so phrased. *See Mendenhall v. Goldsmith,* 59 F.3d 685 (7th Cir.1995).

*Greate Bay Hotel and Casino, Inc.,* 830 F.Supp. 826, 831 (D.N.J.1992). A court will grant a motion for reconsideration where "dispositive factual matters or controlling decisions of law" were presented to the court but not considered. *See Pelham v. United States,* 661 F.Supp. 1063, 1065 (D.N.J.1987). Motions for reconsideration will not be granted where a party simply asks the court to analyze the same facts and cases it had already considered in reaching its original decision, *see Carteret Sav. Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989), or the only apparent purpose for filing the motion is to assert the reasons why the moving party disagrees with the court's decision.[8] *See Hatco Corp. v. W.R. Grace & Co.—Conn.,* 849 F.Supp. 987, 990 (D.N.J.1994) (quotations omitted); *see Florham Park Chev-*

8. In *Resolution Trust Corp. v. Nernberg,* 3 F.3d 62 (3d Cir.1993), the Third Circuit addressed the role of a district court following removal of a case on appeal from a state court judgment. Specifically, the Third Circuit promulgated a supervisory rule district courts should follow in such circumstances, holding:

In all cases removed to the district court after judgment has been entered by a state court, the parties may, within thirty days of the date the case is docketed in the district court, file motions to alter, modify, or open the judgment. After briefing or argument as it deems advisable, the district court should enter an order granting or denying such relief. If the motion is denied or if the parties fail to file within the thirty-day period, the district court should enter an order adopting the state court judgment as its own. Parties then desiring to appeal shall observe the appropriate federal rules of procedure applicable to a judgment of the district court.... [M]otions directed to the district court shall not require it to act as an appellate court. Rather, the motions that we envision are those in the nature of proceedings under Federal Rule of Civil Procedure 59(e)....

*Id.* at 68–69. Although this case did not involve a final judgment on appeal from a state court, it does involve an interlocutory judgment from which leave to appeal could have been obtained in state court and that is now appealable as of right in federal court. Thus, we find that the policies underlying the supervisory rule laid down in *Nernberg* apply here.

*ron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 163 (D.N.J.1988). Here, the State Court made its finding on this issue and the defendant has not presented any factual matters or controlling case law that the State Court overlooked in the original decision. The Reassure Defendants offer nothing more than mere disagreement on this point, which is insufficient to support a motion for reconsideration.[9] Accordingly, the Reassure Defendants' application to dissolve or modify the Restraints will be denied to the extent it is based on Federal Rule of Civil Procedure 59(e) and/or Local Civil Rule 7.1(g).

## II. *Motion for Reconsideration Based on Changed Circumstances*

■ Generally, an interlocutory order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973); *Gagne v. Schraubenfabrick*, 595 F.Supp. 1081, 1083–84 & n. 2 (D.Me. 1984); *Vaughn v. Regents of Univ. of Cal.*, 504 F.Supp. 1349, 1351 and n. 2 (E.D.Cal.1981); 10 *Moore's Federal Practice*, § 54.25[4] (Matthew Bender 3d ed.1997).

■ In the Third Circuit, however, "modification of a[ ] [preliminary] injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion

that would render the continuance of the injunction in its original form inequitable." *Favia v. Indiana Univ.*, 7 F.3d 332 (3d Cir.1993); *see also Township of Franklin Sewerage Auth. v. Middlesex County Utils. Auth.*, 787 F.2d 117, 121 (3d Cir. 1986) (holding that "[t]he standard that the district court must apply when considering a motion to dissolve an injunction is whether the movant has made a showing that changed circumstances warrant the discontinuation of the order").

■ We find that the Reassure Defendants have not produced evidence of changed circumstances that have arisen between the date the Order was entered (May 2, 2000) and the date the Reassure Defendants' motion for reconsideration was filed (May 12, 2000), aside from their assertion that a different legal standard is to be applied for granting a preliminary injunction. We know of no controlling authority in this circuit addressing whether the change in procedural law applied to a case upon removal can constitute "changed circumstances" warranting the discontinuation of a preliminary injunction; however, we believe that the difference between the state and federal standards for granting a preliminary injunction does not constitute such a changed circumstance. As we have previously stated, the standard for granting a preliminary injunction in a federal court in this circuit is substantially similar to the standard for granting a preliminary injunction in a New Jersey state court.[10]

---

9. *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 810 (9th Cir.1963) (holding that, in absence of changed circumstances, and except there be some other 'most cogent reason,' when judge makes or denies interlocutory order, and when appeal lies as of right from such order, it should not be reconsidered, even by judge who made the order, much less by another judge).

10. *Compare ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1477 n. 2 (3d Cir.1996) (en banc) (applying federal standard) *with Crowe v. DeGioia*, 90 N.J. 126, 447 A.2d 173 (1982) (applying New Jersey standard). Four factors govern a district court's decision whether to issue a preliminary in-

junction: (1) whether the movant has shown a reasonable probability of success on the merits, (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party, and (4) whether granting the preliminary relief will be in the public interest. *Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471 at 1477 n. 2. The following principles govern a New Jersey state court's decision whether to grant such relief: (1) whether the granting of a preliminary injunction is necessary to prevent irreparable harm, (2) whether the legal right underlying the movant's claim is well settled as a matter of law, (3) whether the movant has made a preliminary showing of a likeli-

We conclude, therefore, that the different legal standard applicable in federal court does not, in and of itself, provide a basis to grant the Reassure Defendants' application for reconsideration based on changed circumstances. Accordingly, the Reassure Defendants' application to dissolve or modify the Restraints will be denied to the extent it is based on changed circumstances.

### III. *Appeal Pursuant to 28 U.S.C. § 1292(a)(1)*

██ Pursuant to 28 U.S.C. § 1292(a)(1), "courts of appeals shall have jurisdiction of appeals from … [i]nterlocutory orders of the district courts of the United States, … or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." Therefore, the Reassure Defendants may appeal from the Order, as well as any Order entered by this Court denying reconsideration of the Order, in accordance with the Federal Rules of Appellate Procedure. *See* note 8, *supra.*

### CONCLUSION

Upon removal, 28 U.S.C. § 1450 does not give the Court authority to review *de novo* issuance of the Restraints by the State Court. Instead, the Reassure Defendants' only recourse is to seek to dissolve or modify the Restraints pursuant to federal procedure. The Reassure Defendants have failed to establish grounds for granting their motion to dissolve or modify the Order pursuant to (1) Federal Rule of Civil Procedure 59(e) and/or Local Civil Rule 7.1(g) or (2) pursuant to the doctrine of changed circumstances. Accordingly, the Reassure Defendants' application to dissolve or modify the Restraints will be denied except that Tehan will be required to provide the Reassure Defendants with security, pursuant to Federal Rule of Civil

hood of success on the merits of his claim, and (4) whether, on balance, the equities fa-

Procedure 65(c), for the payment of such costs and damages as may be incurred or suffered by them should the Court ultimately find that the Reassure Defendants were wrongfully restrained. The Court will issue an Order to Show Cause directing the parties to address the amount and form of security. In addition, the Court will continue the Restraints on a temporary basis pending resolution of the Order to Show Cause.

An appropriate Order accompanies this Memorandum Opinion.

vor the granting of the preliminary injunction. *Crowe*, 90 N.J. at 132–34, 447 A.2d 173.